UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN GUTMAN and HOWARD
GUTMAN,

        Plaintiffs,                  Case Number 15-12732

v.                                    Honorable David M. Lawson

ALLEGRO RESORTS MARKETING
CORPORATION and OCCIDENTAL
HOTELES MANAGEMENT, S.L.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS
## AND DISMISSING CASE WITHOUT PREJUDICE

While on vacation at the Grand XCaret Resort in Mexico, plaintiff Karen Gutman tripped on some uneven pavement, fell, and broke her ankle. The resort is owned by a Spanish corporation, and its marketing is handled by its wholly owned subsidiary, which is a Florida corporation. Ms. Gutman and her husband sued them both in this Michigan federal court, alleging that the resort premises were negligently maintained, and the defendants are therefore responsible for her damages. Defendant Allegro Resorts Marketing Corporation, the Florida company (and the only defendant served at this point) has moved to dismiss, arguing that this Court has no personal jurisdiction over it. The plaintiffs make no effort to suggest that the Court has general personal jurisdiction over the defendants. But they do insist that defendant Occidental Hoteles Management S.L., (the Spanish company that owns the resort) and Allegro are *alter egos* of each other, and Allegro's Internet marketing activity in Michigan gives the Court specific personal jurisdiction to adjudicate the trip-and-fall claim against these defendants. After reviewing the briefs and records and hearing oral argument on the motion, the Court is unable to conclude that Ms. Gutman's negligence cause of

action arose from the defendant's activities in Michigan. Haling the defendants into this Court, therefore, would violate their rights under the Due Process Clause. The motion to dismiss must be granted.

I.

The underlying facts, as relevant to the disposition of the present motion, are essentially undisputed by the parties. The plaintiffs allege that Karen Gutman was injured while a guest at the defendants' Occidental Grand XCaret Hotel and Resort near Playa Riviera, Mexico, on February 1, 2014. According to the complaint, at around 8:30 p.m., Gutman walked out of the resort's restaurant after dinner, "mistepped over an un- or poorly-marked three-to-four-inch change in elevation," fell, and broke her ankle. Her injury required surgery and installation of stabilizing hardware. Gutman contends that she suffers from impaired mobility and continuing pain, and her husband alleges that as a result of her injuries he has been deprived of the enjoyment of his wife's companionship.

The defendant admits that Allegro Resorts Marketing Corporation is a Florida corporation with its principal place of business in Florida. Allegro concedes that its business is "limited solely to advertising, marketing and otherwise soliciting business in the United States on behalf of 'Occidental' branded hotels and resorts, all of which are located outside of the United States." Allegro contends that it did not have any contact with the plaintiffs relating to their stay at the Occidental property in Mexico, and that Allegro itself does not own or control that property. However, Allegro does not appear to contest seriously any of the basic factual conclusions reached by the district court in another case against Allegro and Occidental, where the court found that "that Allegro and the Occidental Defendants are the same companies for personal jurisdiction purposes."

*Conley v. MLT, Inc.*, No. 11-11205, 2012 WL 1893509, at *4 (E.D. Mich. May 23, 2012). The *Conley* court cited the *alter ego* factors discussed in *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362-63 (6th Cir. 2008), and *Seasword v. Hilti, Inc.*, 449 Mich. 542, 548 n.10, 537 N.W.2d 221, 224 n.10 (1995), and found that Allegro and Occidental shared common ownership, governing boards, and control, and that despite separate corporate identities, Allegro essentially served as Occidental's marketing department.

According to the complaint, Occidental Hoteles Management, S.L. is a Spanish corporation with its principal place of business in Madrid. Allegro does not appear to contest the allegations that Occidental owns the hotel property in Mexico where the Gutmans took their February 2014 vacation, or that Allegro is a wholly owned subsidiary of Occidental. However, at oral argument, Allegro's attorney stated that the actual property may be owned by a Mexican entity, which itself is under Occidental's corporate umbrella.

The *Conley* court found that Allegro maintains a fully interactive website through which customers and travel agents make reservations and book stays at Occidental's resorts, and that the defendants have made contracts with Michigan residents by means of the website. *Conley*, 2012 WL 1893509, at *7. Allegro points out, however, that the plaintiffs do not allege in their complaint, and they do not suggest in their briefing, any particular facts regarding how they booked or conducted their trip to Mexico or their stay at Occidental's hotel. Nor do the plaintiffs assert that they used that website to book their stay at the hotel. They do contend that Allegro markets Occidental properties to Michigan residents through various means, including contacts with Michigan travel agents. But they do not offer any specific facts to explain how and when, if at all, they were exposed to any of Allegro's marketing efforts.

-3-

For its part, Allegro affirmatively asserts that the plaintiffs did not book their hotel stay through Occidental's website. Allegro further asserts that it never sent any materials to the plaintiffs in Michigan, does not maintain any place of business or contacts in the state, does not sell any goods or services here, and "does not derive substantial revenue within Michigan."

The plaintiffs filed their complaint on August 4, 2015, raising state law claims for premises liability (count I), negligence (count II), and loss of consortium (count III). Allegro filed its motion to dismiss for lack of personal jurisdiction on August 25, 2015. Nothing filed on the docket suggests that defendant Occidental Hoteles Management, S.L. has been served yet, and it has not appeared in the case.

## II.

When personal jurisdiction is challenged in a motion filed under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's authority to proceed against the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). When the motion is supported by properly documented factual assertions, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Ibid.* The Court may opt to decide the motion based only on the affidavits, allow discovery of the jurisdictional facts, or, if factual disputes need resolving, hold an evidentiary hearing. *Ibid.* If a factual contest requires resort to the third option, the plaintiff must satisfy the preponderance of evidence standard of proof. Otherwise, the plaintiff need only present

-4-

a *prima facie* case for personal jurisdiction, and the Court views the submissions in the light most favorable to the plaintiff. *Id.* at 1458-59.

In a case where subject matter jurisdiction is based on diversity of citizenship, federal courts look to state law to determine personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). If a Michigan court would have jurisdiction over a defendant, so would a federal district court sitting in this state. *Daimler AG v. Bauman*, --- U.S. ---, 134 S. Ct. 746, 753 (2014) (explaining that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons"). Michigan law recognizes two bases for personal jurisdiction over corporations: general, Mich. Comp. Laws § 600.711, and specific (called "limited personal jurisdiction" in state law parlance), Mich. Comp. Laws § 600.715. Michigan's so-called Long Arm Statute defines the scope of its limited personal jurisdiction. But "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, --- U.S. ---, 134 S. Ct. 1115, 1121 (2014). Michigan interprets its Long Arm Statute to allow personal jurisdiction to extend to the limits imposed by the federal constitution. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

General jurisdiction allows a plaintiff to sue a defendant "on any and all claims against it, wherever in the world the claims may arise." *Daimler*, 134 S. Ct. at 751. The plaintiffs do not suggest such judicial authority exists in this case. "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (i.e., an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation')."

*Walden*, 134 S. Ct. at 1122 n.6 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846, 2851 (2011)).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "Thus, in order to determine whether the [Court is] authorized to exercise jurisdiction over [the defendant], we ask whether the exercise of jurisdiction 'comports with the limits imposed by federal due process' on the [forum state]." *Ibid.* (quoting *Daimler*, 134 S. Ct. at 753). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Ibid.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alterations omitted). The Sixth Circuit historically has applied three criteria to guide the minimum contacts analysis, which it enunciated in *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.3d at 381.

### A. Purposeful Availment

The Sixth Circuit "views the purposeful availment prong of the *Southern Machine* test as 'essential' to a finding of personal jurisdiction." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)). "Purposeful availment" occurs when "the defendant's contacts with the forum state 'proximately result from

actions by the defendant himself that create a "substantial connection" with the forum State.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Physical presence within the state is not required to create such a connection. *Southern Machine*, 401 F.3d at 382. The Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp.*, 471 U.S. at 476. The defendant's maintenance of its fully interactive website, which allows Michigan residents to enter into booking contracts with the defendants, easily satisfies this requirement. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996). The facts discussed by the *Conley* court fortify this conclusion: "from 2007 to 2010, 155 guests with Michigan addresses booked hotel or resort reservations through Defendants' website. . . . Defendants entered into contracts with Michigan residents using their website." *Conley*, 2012 WL 1893509, at *7. Allegro does not dispute these facts. And it follows logically that Allegro should have had "reason to foresee being 'haled before' a Michigan court." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004) (citing *Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 811 (E.D. Mich. 2000)).

### B. Cause of Action Arising From Local Activities

It is this second requirement that causes the plaintiffs to stumble here. The plaintiffs argue without elaboration that the defendants' marketing activities in Michigan are somehow "intertwined" with the defective premises in Mexico. That connection, however, is not self-evident. And the Sixth Circuit has emphasized that "[i]t is not enough that there be some connection between the in-state activity and the cause of action — that connection must be *substantial*," and "[t]he

defendant's contacts with the forum state must relate to the operative facts and nature of the controversy." *Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*, 692 F.3d 469, 472-73 (6th Cir. 2012).

One might posit that without the marketing efforts, the plaintiffs may not have learned of the defendants' resort and would not have booked their trip to Mexico there. And absent the booking, the accident would not have occurred. However, the Sixth Circuit explained recently in *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499 (6th Cir. 2014), that the type of mere "but-for" association relied upon by the plaintiffs is not sufficient to support the exercise of limited personal jurisdiction. That explanation is worth repeating here in detail:

> Here, plaintiffs argue that "but for Jordan's outreach to . . . Beydoun on behalf of Wataniya, Beydoun would not have been in a position to have been injured by Wataniya. . . . Thus, Beydoun's cause of action arises out of Wataniya's connections to Michigan." Essentially, plaintiffs argue that their causes of action arose from Wataniya's initial contact with Michigan because but for the initial contact with Michigan, Beydoun would never have moved to Qatar, and if Beydoun had never moved to Qatar, he could not have been wrongfully blamed for Wataniya's financial losses and wrongfully detained for them.
>
> We disagree because more than mere but-for causation is required to support a finding of personal jurisdiction. To the contrary, the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state. Indeed, the Supreme Court has emphasized that only consequences that *proximately* result from a party's contacts with a forum state will give rise to jurisdiction. *Burger King*, 471 U.S. at 474. As our sister circuits have noted:
>
>> [A]lthough the analysis may begin with but-for causation, it cannot end there. The animating principle behind the relatedness requirement is the notion of a tacit *quid pro quo* that makes litigation in the forum reasonably foreseeable. But-for causation cannot be the sole measure of relatedness because it is vastly overinclusive in its calculation of a defendant's reciprocal obligations. The problem is that it has no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain. If but-for causation sufficed, then defendants' jurisdictional obligations would bear no meaningful relationship to the scope of the "benefits and

-8-

> protection" received from the forum. As a result, the relatedness inquiry cannot stop at but-for causation.

*Beydoun*, 768 F.3d at 507-08 (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 322 (3d Cir. 2007)) (other citations, quotations, and footnotes omitted).

Certainly, there are cases in which interactive advertising itself can satisfy this element of the *Southern Machine* test. For instance, in *Neogen Corp. v. Neo Gen Screening, Inc.*, the defendant's advertising or internet marketing operations directly gave rise to the harm alleged through the use of infringing trademarks on a website and other materials made available to Michigan consumers who also were exposed to the plaintiff's competing brand, causing the court to concede the "possib[ility] that NGS's activities in Michigan have caused economic injury to Neogen," and thereby satisfying the "'arising from' requirement." 282 F.3d at 892. Of course, that did not happen here. The asserted basis of liability in this case is premises liability, which by definition infers that the claim arose where the "premises" are located. The claim did not — could not — arise from the defendants' advertising contacts in Michigan.

That point was made well a few years ago by the Eleventh Circuit, which concluded on similar facts that there is no substantial or proximate factual relationship between advertising of vacation accommodations and an alleged on-site personal injury that occurs at the defendant's remote hotel property, where none of the allegedly negligent acts occurred within the forum state:

> The Frasers' injuries were not a sufficiently foreseeable consequence of their hotel's business relationship with J&B Tours to satisfy the constitutional relatedness requirement. A negligence action for personal injuries sustained while vacationing in another country does not "arise from" the simple act of making a reservation. A finding that such a tenuous relationship somehow satisfied the relatedness requirement would not only contravene the fairness principles that permeate the jurisdictional due process analysis, but would also interpret the requirement so broadly as to render it virtually meaningless.

-9-

*Fraser v. Smith*, 594 F.3d 842, 851 (11th Cir. 2010); *see also Walden*, 134 S. Ct. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King*, 471 U.S. at 475)); *Kinder v. City of Myrtle Beach*, No. 11-712, 2015 WL 1439136, at *4 (S.D. Ohio Mar. 27, 2015) ("[E]ven if there was purposeful availment through advertising or solicitation in Ohio, an alleged slip-and-fall by Plaintiff on a property owned by the City in the State of South Carolina does not arise out of or have any substantial connection to such activity in Ohio. Therefore, the Defendant would not have reasonably anticipated being haled into court in Ohio.") (citing *World-Wide Volkswagen*, 444 U.S. at 297); *Dillard v. Gen. Acid Proofing, Inc.*, No. 12-13813, 2013 WL 1563213, at *9 (E.D. Mich. Apr. 15, 2013) ("The facts giving rise to Plaintiff's negligence claim against Prince Resorts do not arise from Prince Resorts's contacts with this state. The alleged negligence occurred in Hawaii. Plaintiff's negligence claim did not arise from any marketing efforts in Michigan.").

At oral argument, the plaintiffs made reference to a "single enterprise" theory, which was mentioned briefly by the Supreme Court in *Goodyear Dunlop Tires Operations, S.A. v. Brown*. *See* 131 S. Ct. at 2857. The plaintiffs appear to argue that Allegro's marketing and advertising activity fall within the corporate sphere of Occidental's worldwide activities, which includes reaching into Michigan to solicit customers to come to its resorts. That argument was made in *Goodyear* — belatedly — to advance the concept of *general* personal jurisdiction, a theory that is not in play in this case. More importantly, however, the argument fails here because there is nothing in the record that would make Michigan "home" to either Allegro or Occidental, and the plaintiffs still must

connect the advertising activity to the tortious conduct to prevail on their case-specific personal jurisdiction theory, which they have failed to do.

A word or two is required about *Conley v. MLT, Inc.*, in which another judge in this district held in a remote personal injury lawsuit against these same defendants that the "arising from" element was satisfied because "Plaintiffs chose to vacation at the Occidental resort . . . based upon Defendants' direct advertising efforts in Michigan," reasoning that their son "would not have been injured but for Plaintiffs' contract with Defendants to stay at Defendants' resort." 2012 WL 1893509, at *8. That case, of course, is not binding authority. And there are reasons not to follow it. For one, the court relied primarily on *Theunissen v. Matthews*, 935 F.2d at 1464, for its conclusion. However, *Theunissen* involved readily distinguishable facts, where the plaintiff was involved in the performance of a contract for carriage of goods from a remote state into Michigan, and where his injuries occurred as a result of the defendant's employee's negligence at the point of pick-up. The defendant had arranged for the physical transportation of goods into the forum state, and the plaintiff was injured in the course of performing that carriage. For another, the *Conley* court did not have the benefit of the Supreme Court's subsequent decisions clarifying the more exacting requirements for case-specific jurisdiction, such as *Walden v. Fiore*. Finally, where *Conley* implies that a mere "but-for" relationship between contacts and claims will suffice to support an exercise of specific personal jurisdiction, it collides with later published decisions of our supervising appellate court, *e.g.*, *Beydoun*, 768 F.3d at 507-08, as well as the Supreme Court's recent clear pronouncement in *Walden*, that any exercise of limited personal jurisdiction must be premised on a *substantial* connection between the alleged in-forum activities and the injuries for which a plaintiff seeks to recover.

Because the plaintiff is relying on the *alter ego* identity between Allegro and Occidental Hoteles to pursue its case in this district against that premises owner, personal jurisdiction over the latter must fail as well, since it is based on the Internet conduct of the former.  Although Occidental Hoteles has not been served with process yet, the Court can see no basis for maintaining the case against it in this forum.  No supporting facts appear in the complaint.  That does not leave the plaintiff without a remedy, as it appears that general personal jurisdiction likely exists in Florida over Allegro and, by extension, its *alter ego*.  The case here, however, must be dismissed for want of personal jurisdiction.

III.

The plaintiff has not established a *prima facie* case for limited personal jurisdiction over the defendants that can satisfy the Due Process Clause.

Accordingly, it is **ORDERED** that the motion to dismiss by defendant Allegro Resorts Marketing Corporation [dkt. #9] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED** against all defendants **WITHOUT PREJUDICE**.

        s/David M. Lawson
        DAVID M. LAWSON
        United States District Judge

Dated: December 14, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 14, 2015.

        s/Susan Pinkowski
        SUSAN PINKOWSKI